# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **DONNA K. BRECKLE,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:19-CV-02400-NCC |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Donna K. Breckle ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 18) and Defendant has filed a brief in support of the Answer (Doc. 22). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on July 11, 2016 (Tr. 214-25). Plaintiff was initially denied on November 9, 2016, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 87-94, 97-101). After a hearing, by decision dated November 19, 2018, the ALJ found Plaintiff not disabled (Tr. 8-25). On July 22, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021, and that Plaintiff has not engaged in substantial gainful activity since March 15, 2016, the alleged onset date (Tr. 13). The ALJ found Plaintiff has the severe impairments of diabetes with neuropathy, depression and anxiety, and mild hearing loss, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[1] with the following limitations (Tr. 16). Plaintiff may not operate foot controls (*Id.*). She requires a sit/stand option two times per hour for five minutes while remaining on task at workstation (*Id.*). She is limited to frequent handling and fingering (*Id.*). Plaintiff can climb ramps and stairs occasionally, and never climb ladders, ropes, or scaffolds (*Id.*). She can never balance and can occasionally stoop, kneel, crouch, and crawl (*Id.*). She can never work at unprotected heights, and never around moving mechanical parts (*Id.*). Plaintiff can have no exposure to humidity and wetness or extreme cold and heat (*Id.*). She should not be required to work in an environment with more than a moderate noise level (*Id.*). She can have only occasional contact with coworkers, supervisors, and the public (*Id.*). The ALJ found Plaintiff could not perform any past relevant work (Tr. 19). The ALJ determined that Plaintiff was a younger individual on the alleged onset date, but she subsequently changed age category to closely approaching advanced age (*Id.*). The ALJ further found that Plaintiff has

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 416.967(a), 404.1567(a).

2

acquired work skills from past relevant work (*Id.*).  The ALJ thus determined that considering Plaintiff's age, education, work experience, and RFC, Plaintiff had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy that Plaintiff could perform including master sheet clerk, medical voucher clerk, and mortgage loan computation clerk (Tr. 19-20).  Therefore, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 20).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).

3

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id*. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ failed to properly consider the GRID[2] requirements set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.14 ("Rule 201.14") (Doc. 18 at 3-11). Second, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's RFC (*Id*. at 11-13). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

---

[2] The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Id.* (quoting *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993)).

As Plaintiff's argument regarding GRID Rule 201.14 is predicated on the ALJ's failure to properly evaluate Plaintiff's RFC, the Court will first address the ALJ's RFC determination. Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also*

6

*Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ determined Plaintiff has the RFC to perform sedentary work with the following limitations (Tr. 16). Plaintiff may not operate foot controls (*Id.*). She requires a sit/stand option two times per hour for five minutes while remaining on task at workstation (*Id.*). She is limited to frequent handling and fingering (*Id.*). Plaintiff can climb ramps and stairs occasionally, and never climb ladders, ropes, or scaffolds (*Id.*). She can never balance and can occasionally stoop, kneel, crouch, and crawl (*Id.*). She can never work at unprotected heights, and never around moving mechanical parts (*Id.*). Plaintiff can have no exposure to humidity and wetness or extreme cold and heat (*Id.*). She should not be required to work in an environment with more than a moderate noise level (*Id.*). She can have only occasional contact with coworkers, supervisors, and the public (*Id.*).

As a preliminary matter, the Court will consider the ALJ's evaluation Plaintiff's subjective complaints,[3] as the ALJ's evaluation of Plaintiff's symptoms was essential to the ALJ's determination of other issues, including Plaintiff's RFC. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity,

---

[3] Social Security Ruling (SSR) 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of her analysis of Plaintiff's subjective complaints are based on substantial evidence.

      The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not to be "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (Tr. 17). An ALJ may properly consider the consistency of Plaintiff's subjective complaints with the objective medical evidence. *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017). *See also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (providing that objective medical evidence is a useful indictor in making reasonable conclusions about the intensity and persistence of a claimant's symptoms). Indeed, the ALJ conducted a thorough review of the limited medical record. In doing so, the ALJ detailed largely normal mental health findings. Specifically, in June 2017, Plaintiff's primary care physician suggested she consult with a psychologist regarding her psychological issues and prescribed her Xanax (Tr. 458). The records then indicate that Plaintiff received

8

mental health therapy from Casey Mills, LPC, at Sandhill Counseling from August 2017 to December 2017 (Tr. 522-55).  The ALJ noted that although Plaintiff was indicated as depressed or anxious, Plaintiff's "general mental faculties were intact and appropriate, with some report of short term[sic] memory difficulty" (Tr. 18, 546, 554).  In fact, the record is replete with largely normal findings including repeated findings that Plaintiff was alert and oriented with intact memory, had appropriate grooming, used direct eye contact, had a talkative manner of interaction, had normal speech, and had a normal thought process (Tr. 520, 525, 527, 531, 533, 536, 538, 540, 542, 544, 548, 552).  The ALJ additionally found Plaintiff's depression and anxiety symptoms improved with treatment, including counseling and medications (Tr. 18, 520, 533, 550, 554).  Specifically, as noted by the ALJ, Plaintiff reported 50%-60% relief with Abilify (Tr. 18, 520).  *Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015) (quoting *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002)) ("An impairment which can be controlled by treatment or medication is not considered disabling.").  *See also* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (ALJ may consider effectiveness of medication and other treatment to control symptoms.).

      The ALJ also determined that the consistently normal examination findings regarding Plaintiff's physical impairments were inconsistent with disabling impairments.  In doing so, the ALJ reviewed the full treatment record and detailed the findings by each provider.  Of note, and relevant to Plaintiff's current contentions,[4] the ALJ indicated that at an October 2016 evaluation, Plaintiff displayed full range of motion with good strength in the upper extremities and some mild reduction in strength in the lower extremities, did not use an assistive device, had good

---

[4] The ALJ also addressed Plaintiff's visit with a podiatrist, her two hearing exams, and Plaintiff's diagnoses of obstructive sleep apnea after a sleep study.  As Plaintiff does not raise any argument regarding the impairments underlying these visits or immediately discontinued treatment in the case of podiatrist, the Court does not detail them here.

coordination and normal gait when walking, could not feel the monofilament on her medial bilateral feet, but her reflexes were intact, had no difficulty getting up and down but was unable to walk on her heels and toes, her tandem walking was abnormal, and while she could stand on one foot, she could not hop (Tr. 17, 417-22).  Plaintiff's endocrinologist indicated that Plaintiff's type 2 diabetes was considered poorly controlled such that Plaintiff's medication was gradually titrated up (Tr. 446).  Plaintiff's monofilament tests got progressively worse from February 2017 to March 2018, degrading from decreased to absent with no vibration sensation (Tr. 17, 432, 439, 445).  Plaintiff was prescribed Cymbalta and Lyrica for her neuropathy (*See, e.g.,* Tr. 433).  Plaintiff reported partial benefit from the mediation but continued symptoms of diabetic neuropathy (Tr. 454, 459).  Thus, the ALJ highlighted Plaintiff's neuropathy and indicated that Plaintiff has problems with balance as indicated in her RFC determination (Tr. 14, 421-22).

   Further, while the ALJ did not explicitly address Plaintiff's activities of daily living in relation to her evaluation of Plaintiff's subjective complaints, it is clear from the opinion that the ALJ found Plaintiff's performance of certain tasks to be inconsistent with Plaintiff's reports regarding the intensity, persistence and limiting effects of her symptoms (Tr. 14-15).  While Plaintiff reported some trouble interacting with others, which was accounted for by the ALJ in her finding of moderate limitation in this area, Plaintiff also reported that she is able to prepare her own meals, drives a car when she goes out, shops, manages her finances, has no problem with her personal care, and is able to take care of household tasks (Tr. 15, 41, 44, 49, 286-93).  During a September 2016 consultative examination, Plaintiff stated that, "she is able to do household chores, cooking, cleaning, laundry and vacuuming.  She is also able to handle her own finances" (Tr. 410).  Plaintiff also reported to her counselor that she was "open to volunteering at animal shelters" in October 2017 (Tr. 533).  *See also* Tr. 556 (listing "I will go visit animals once

10

per week" as a goal for the new year). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility"); *Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'"); *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (finding the plaintiff's reported ability to perform light housework, cook, do laundry, shop, watch TV, drive, leave the house alone, and regularly attend church "undermines her assertion of total disability").

In addition to fully evaluating Plaintiff's subjective complaints, the ALJ also addressed the medical opinion evidence of record (Tr. 18-19). Specifically, the ALJ considered the September 29, 2016, opinion of consultative psychological examiner Dr. David Lipsitz, Ph.D. ("Dr. Lipsitz"), affording it "partial weight" (Tr. 18-19, 408-11). Dr. Lipsitz diagnosed Plaintiff with Major Depressive Disorder, Mild and, as noted by the ALJ, Dr. Lipsitz opined that Plaintiff is mildly limited except in the area of persistence and pace where he found no limitation (Tr. 18-19, 410). Dr. Lipsitz concluded that Plaintiff appeared to be in need of ongoing psychiatric treatment combining medication with individual psychotherapy but that "[h]opefully medication and therapy could help alleviate the mood disturbance so that she could make a maximal adjustment to her environment in light of whatever physical limitations may be present" (Tr. 411). The ALJ found "in general" the opinion is supported by the medical opinion evidence of record (Tr. 19). However, the ALJ assigned Plaintiff moderate limitations in the area of social interaction because of Plaintiff's anxiety, reported isolation and lack of desire to interact with other people.

11

Additionally, the ALJ considered and properly afforded the October 11, 2016 opinion of state agency psychologist Dr. Marc Maddox, Ph.D. ("Dr. Maddox") "partial weight" (Tr. 18, 66-68, 79-80). The ALJ noted that Dr. Maddox opined Plaintiff's metal functioning limitations were mild across the board and non-severe as a result (*Id.*). The ALJ found that Dr. Maddox's opinion was based primarily on the opinion provided by Dr. Lipsitz and thus afforded Dr. Maddox's opinion the same weight (Tr. 18). Indeed, Dr. Maddox's opinion largely relied on the review of the opinion by Dr. Lipsitz; it appears to have been the only medical evidence of record at the time addressing Plaintiff's mental health impairments. *See* Tr. 68, 80 ("[Plaintiff] alleges depression. She is not receiving any treatment for mood disturbance."). The ALJ again noted that she assigned Plaintiff moderate limitations in the area of interacting with others for the reasons indicated above including Plaintiff's subsequent mental health treatment (Tr. 18).

The ALJ also properly afforded "partial weight" to the opinion of state agency physician Dr. Manuel Salinas, M.D. ("Dr. Salinas") (Tr. 18, 69-72, 81-84). As noted by the ALJ, Dr. Salinas opined that Plaintiff is capable of medium work with the following limitations: no ladders, ropes, or scaffolds; all other postural movements only frequently; and avoid concentrated exposure to cold, heat, wetness, noise, vibration, heights, and hazards (*Id.*). The ALJ found Dr. Salinas had not directly evaluated Plaintiff and that his opinion was inconsistent with medical records post-dating his analysis, specifically as they related to the advance of Plaintiff's neuropathy (Tr. 18). Thus, the ALJ found Dr. Salinas' evaluation that Plaintiff could perform medium work with some functional limitations to be inconsistent with Plaintiff's decreased sensation and difficulties with balance (*Id.*). As the ALJ did so here with all three of these opinions, an ALJ may properly evaluate an opinion based on an opinion's consistency with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more

consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Plaintiff specifically asserts that the ALJ's determination that Plaintiff could "never balance" conflicted with the ALJ's finding that Plaintiff could stay on task while standing (Tr. 16). Indeed, the ALJ found that Plaintiff "does have problems with balance" but "does not require the use of a walker, two crutches, or two canes" (Tr. 14). The ALJ included Plaintiff's balance issues in her RFC determination, finding Plaintiff could "never balance" (Tr. 16). However, the companion manual to the DOT, the Selected Characteristics of Occupations (SCO) defines "balancing" as "maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Therefore, the ALJ's determination that Plaintiff could "never balance" does not conflict with the ALJ's finding that Plaintiff could stay on task while standing.

To the extent the Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, as well as the evaluation of Plaintiff's subjective complaints.

Next, Plaintiff argues that the ALJ failed to properly consider GRID Rule 201.14 (Doc. 18 at 3-11). Specifically, Plaintiff turned fifty years of age on November 29, 2017, during the pendency of her claim, and is defined as a person closely approaching advanced age.[5] Plaintiff

---

[5] 20 C.F.R. § 404.1563(d).

13

asserts that she would meet the requirements set forth in GRID Rule 201.14 if she is limited to sedentary work, she cannot perform past relevant work, and she has no transferable skills to sedentary work or if she is limited to simple tasks. While the ALJ found Plaintiff limited to a reduced range of sedentary work and Plaintiff cannot perform past relevant work, the ALJ found Plaintiff has acquired skills from past relevant work that are transferable to other sedentary jobs (Tr. 19). The ALJ also did not limit Plaintiff to simple work in her RFC determination (Tr. 16). Plaintiff argues that she should be limited to simple work because of her physical pain from neuropathy and her emotion pain resulting from her mental health impairments (Doc. 18 at 5). However, as the Court has determined that the ALJ's RFC finding is supported by substantial evidence, Plaintiff also cannot be found disabled under the GRID requirements set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.14.

Finally, to the extent Plaintiff appears to challenge the vocational expert's testimony (*See* Doc. 18 at 13), the Court finds that the ALJ's determination that Plaintiff could perform other jobs in the national economy to be supported by substantial evidence. As addressed in more detail above, the Court finds the ALJ's RFC determination to be supported by substantial evidence. Further, the hypothetical which the ALJ posed to the VE captured the concrete consequences of Plaintiff's limitations and included all of Plaintiff's impairments as supported by substantial evidence in the record (*See* Tr. 44-60). An ALJ is required to include only a claimant's credible limitations in her hypothetical to the Vocational Expert. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)); *Wildman*, 596 F.3d at 969 ("[T]he ALJ was not obligated to include limitations from opinions he properly

14

disregarded."); *Guilliams v. Barnhart*, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); *Gilbert v. Apfel*, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."). Because there was work which Plaintiff could perform, based on the testimony of the VE and his independent review of the DOT, the ALJ found Plaintiff was not disabled. *Martise*, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting *Lacroix*, 465 F.3d at 889). As such, the Court finds that the ALJ posed a proper hypothetical to the VE; that the ALJ properly relied on the VE's testimony that there was work existing in significant numbers which Plaintiff could perform; and that the ALJ's finding that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 16th day of July, 2020.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

15